**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION**

| | |
|---|---|
| BNSF RAILWAY COMPANY,      ) | |
|     ) | |
|    Plaintiff-Counterclaim Defendant,  ) | |
|     ) | |
| v.     ) | Civil Action No. 4:26-cv-00832-P |
|     ) | |
| BROTHERHOOD OF LOCOMOTIVE  ) | |
| ENGINEERS AND TRAINMEN, and  ) | |
| INTERNATIONAL ASSOCIATION OF  ) | |
| SHEET METAL, AIR, RAIL AND  ) | |
| TRANSPORTATION WORKERS –  ) | |
| TRANSPORTATION DIVISION,  ) | |
|     ) | |
|    Defendants-Counterclaim Plaintiffs.  ) | |
|     ) | |

**DEFENDANT-COUNTERCLAIM PLAINTIFF BROTHERHOOD OF LOCOMOTIVE
ENGINEERS AND TRAINMEN'S ANSWER, ADDITIONAL DEFENSES AND
VERIFIED COUNTERCLAIM FOR PRELIMINARY AND PERMANENT
<u>INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES</u>**

Defendant-Counterclaim Plaintiff Brotherhood of Locomotive Engineers and Trainmen

("BLET" or "Union") hereby answers the Complaint of Plaintiff Counterclaim-Defendant BNSF

Railway Company ("BNSF" or "Carrier"). BLET denies the allegations contained in the

Complaint except to the extent specifically admitted herein. In response to the like-numbered

paragraphs of the Complaint, BLET answers as follows:

1.     The first two sentences of ¶ 1 are admitted. BLET denies the remainder of ¶ 1.

2.     BLET admits that the first, second and fourth sentences of ¶ 2 are assertions made

by BNSF, but denies those assertions have any validity or merit. The third sentence of ¶ 2 is denied.

3.     Denied.

4.     Admitted.

5.     Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      The last 2 sentences of ¶ 9 are denied. The rest of ¶ 9 is admitted.

10.     Denied

11.     The first sentence of ¶ 11 is admitted. With respect to the second sentence, BLET submits that Article IX of the 1996 National Agreement speaks for itself and, therefore, denies BNSF's characterization of it.

12.     Admitted.

13.     BLET submits that Article IX, Section 1(b) of the 1996 National Agreement speaks for itself and, therefore, denies BNSF's characterization of it.

14.     BLET submits that Article IX, Section 1(c) of the 1996 National Agreement speaks for itself and, therefore, denies BNSF's characterization of it.

15.     BLET submits that Side Letter #9 of the 1996 National Agreement speaks for itself and, therefore, denies BNSF's characterization of it.

16.     BLET submits that Side Letter #9 of the 1996 National Agreement speaks for itself and, therefore, denies BNSF's characterization of it.

17.     Admitted.

18.     BLET admits that the arbitration award referenced in ¶ 18 exists, but submits that the award speaks for itself and, therefore, denies BNSF's characterization of it.

19.     BLET admits that the arbitration award referenced in ¶ 19 exists, but submits that the award speaks for itself and, therefore, denies BNSF's characterization of it.

20.     Admitted.

21.    Admitted.

22.    BLET is without sufficient knowledge to form a belief as to the truth of the allegations in ¶ 22 and, therefore, denies the allegations therein.

23.    BLET admits that the 2022 Implementing Agreement between it and BNSF exists, but submits that the agreement speaks for itself and, therefore, denies BNSF's characterization of it. BLET is without sufficient knowledge to form a belief as to the truth of the allegations in ¶ 23 concerning SMART-TD and, therefore, denies the allegations therein.

24.    Denied.

25.    BLET admits only that BNSF had proposed a modification of the calling rules of the 2022 Implementing Agreement. All other allegations are denied.

26.    Admitted.

27.    Admitted.

28.    Admitted.

29.    Admitted.

30.    The first two sentences of ¶ 30 are admitted. BLET is without sufficient knowledge to form a belief as to the truth of the allegations in the third sentence and, therefore, denies the allegations therein. BLET denies the remainder of ¶ 30.

31.    Denied.

32.    BLET is without sufficient knowledge to form a belief as to the truth of the allegations in ¶ 32 and, therefore, denies the allegations therein.

33.    BLET is without sufficient knowledge to form a belief as to the truth of the allegations in ¶ 33 and, therefore, denies the allegations therein.

34.    BLET is without sufficient knowledge to form a belief as to the truth of the allegations in ¶ 34 and, therefore, denies the allegations therein.

35.    The first sentence of ¶ 35 is admitted. BLET is without sufficient knowledge to form a belief as to the truth of the remaining allegations in ¶ 35 and, therefore, denies the allegations therein.

36.    BLET is without sufficient knowledge to form a belief as to the truth of the allegations in the first sentence of ¶ 36 and, therefore, denies the allegations therein. The second sentence of ¶ 36 is denied.

37.    The first sentence of ¶ 37 is denied. BLET is without sufficient knowledge to form a belief as to the truth of the remaining allegations in ¶ 37 and, therefore, denies the allegations therein.

38.    BLET is without sufficient knowledge to form a belief as to the truth of the allegations in the first sentence of ¶ 38 and, therefore, denies the allegations therein. The second sentence of ¶ 38 is denied.

39.    BLET is without sufficient knowledge to form a belief as to the truth of the allegations in ¶ 39 and, therefore, denies the allegations therein.

40.    Denied.

41.    Denied.

42.    Admitted.

43.    Denied.

44.    BLET admits that BNSF's ECS Notice exists, but submits that the notice speaks for itself and, therefore, denies BNSF's characterization of it. BLET is without sufficient

knowledge to form a belief as to the truth of the allegations in ¶ 44 concerning SMART-TD and, therefore, denies the allegations therein.

45.     With respect to the allegations concerning BNSF's proposal to BLET, the allegations in the first sentence of ¶ 45 are admitted. The second sentence is denied.

46.     BLET admits that BNSF's ECS Notice to it exists, but submits that the notice speaks for itself and, therefore, denies BNSF's characterization of it. BLET is without sufficient knowledge to form a belief as to the truth of the allegations in ¶ 44 concerning SMART-TD and, therefore, denies the allegations therein.

47.     Admitted.

48.     The first two sentences of ¶ 48 are admitted. With respect to the third sentence, BLET admits only that the meeting was cancelled.

49.     Admitted.

50.     Admitted.

51.     The first sentence of ¶ 51 is denied. The second sentence is admitted.

52.     The first sentence of ¶ 52 is admitted. The second sentence is denied.

53.     Admitted.

54.     BLET admits that it sent a position statement to the Chairman of the NCCC on June 24, 2026, but submits that the position statement speaks for itself and, therefore, denies BNSF's characterization of it.

55.     Admitted.

56.     BLET is without sufficient knowledge to form a belief as to the truth of the allegations in ¶ 56 and, therefore, denies the allegations therein.

57.     Admitted.

58. The first three sentences of ¶ 58 are admitted. With respect to the third sentence, BLET only admits that Unions told BNSF it would consider its implementation a major dispute and denies the remaining allegations of the sentence.

59. BLET admits that BNSF sent a letter to the BLET on July 7, 2026, but submits that the letter speaks for itself and, therefore, denies BNSF's characterization of it. BLET admits the last sentence of ¶ 59 in that it did not accept BNSF's offer to relieve itself of its contractual requirement to hold its Article IX proposal in abeyance pending expedited, party pay arbitration.

60. Admitted.

61. Denied.

62. BLET submits that Article IX, Section 1(a) of the 1996 National Agreement speaks for itself and, therefore, denies BNSF's characterization of it.

63. BLET submits that Article IX, Section 1(b) of the 1996 National Agreement speaks for itself and, therefore, denies BNSF's characterization of it.

64. BLET submits that Article IX, Section 1(c) of the 1996 National Agreement speaks for itself and, therefore, denies BNSF's characterization of it. All other allegations of ¶ 64 are denied.

65. Denied.

66. BLET admits that the arbitration award referenced in ¶ 66 exists, but submits that the award speaks for itself and, therefore, denies BNSF's characterization of it. All other allegations of ¶ 66 are denied.

67. Denied.

68.    Admitted only that in the past BNSF has unilaterally changed practices, policies, and standards governing attendance for employees represented by BLET. BLET expressly denies that such unilateral actions constitute a "long-standing and well-settled past practice."

69.    BLET admits the allegations in the first sentence of ¶ 69 only to the extent that BNSF has stated that it intends to implement its Article IX proposal on July 22, 2026. The second sentence is denied.

70.    Denied.

71.    Denied.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    BLET reincorporates its response to ¶¶ 1-76.

78.    Paragraph 40 states conclusions of law to which no response is required.

79.    Denied.

80.    Denied.

81.    BLET reincorporates its response to ¶¶ 1-80.

82.    Denied.

83.    Denied.

84.    BLET reincorporates its response to ¶¶ 1-83.

85.    Paragraph 40 states conclusions of law to which no response is required.

86.    Denied.

Prayer for Relief: BLET denies that BNSF is entitled to any of the relief sought in its Prayer for Relief.

## BLET'S ADDITIONAL DEFENSES

BLET reserves the right to assert any and all applicable defenses to BNSF's Complaint and to amend or otherwise supplement this pleading. Without limiting the generality of the foregoing and without regard to whether defenses set forth below are affirmative defenses within the meaning of Rule 8(c) of the Federal Rules of Civil Procedure, and without conceding that any such defenses must be set forth in its Answer or assuming any burden of proof that it would not otherwise bear, BLET states as follows:

1.      BNSF's Complaint fails to state a claim upon which relief can be granted.

2.      The parties' dispute over BNSF's unilateral implementation of its Article IX proposal in direct violation of Side Letter #9 to the parties' 1996 National Agreement is properly characterized as a "major dispute" under Section 2, First and Seventh and Section 6 of the RLA, 45 U.S.C. §§ 152, First and Seventh, and 156.

3.      BNSF lacks clean hands.

4.      BNSF is estopped from asserting its claims.

5.      BNSF's claims are barred by its circumvention of and noncompliance with the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.,* and thus, this court lacks jurisdiction over them.

## VERIFIED COUNTERCLAIM FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES

Plaintiff Brotherhood of Locomotive Engineers and Trainmen ("BLET" or "Union") for its Complaint against BNSF Railway Company ("BNSF" or "Carrier") hereby states:

### JURISDICTION AND VENUE

1. This is an action brought, *inter alia,* pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, (hereinafter "the RLA" or "the Act"). This Court has subject matter jurisdiction as follows: (a) under 28 U.S.C. § 1331 because the case arises under the laws of the United States, namely, the RLA; (b) under 28 U.S.C. § 1337 because the matter in controversy arises under an Act of Congress regulating commerce, namely, the RLA; and (c) under 28 U.S.C. §§ 2201 and 2202 because this is an actual controversy in which the BLET seeks declaratory judgment.

2. Venue under 28 U.S.C. § 1391(b)(2) and (3) is proper, and personal jurisdiction over BNSF exists in this District wherein BNSF is located and where it regularly conducts business operations and has substantial contacts.

### PARTIES

3. BLET is an unincorporated labor organization with headquarters in Independence, Ohio. It is the exclusive collective bargaining representative of the craft or class of Locomotive Engineers ("engineers") in the employ of BNSF. It is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. §151 Sixth. The collective bargaining agreements that govern the engineers involved in this dispute are administered by four BLET General Committees of Adjustment ("GCA"): 1) BNSF–ATSF GCA, 2) BNSF–C&S/CRI&P/FWD GCA, 3) BNSF/MRL GCA, and 4) BNSF–SLSF GCA, which also are all unincorporated labor organizations. The principal officer of each GCA is known as the General Chairman.

4. BNSF is a corporation engaged in the interstate transportation of goods by rail and is a "carrier" as defined by Section 1, First of the RLA, 45 U.S.C. § 151, First. BNSF has its corporate headquarters in Fort Worth, Texas, and operates within this judicial district.

5. This action is brought by BLET on its own behalf and on behalf and in the interest of all engineers in the craft or class in the service of BNSF that BLET represents.

## FACTS

6. BLET and BNSF are parties to multiple CBAs that govern the rates of pay, rules, and working conditions of BNSF's engineers represented by the Union. Some of the parties' collective bargaining agreements are system-wide in scope, meaning they cover all the engineers represented by BLET who are employed by BNSF. Other CBAs cover only those portions of the BNSF system that correspond to the properties of former railroads that have since been merged into BNSF.

7. One of the CBAs to which BLET and BNSF are parties is referred to as the 1996 National Agreement. (Exhibit 1, BLET Appendix (App'x) at 1)

8. Article IX of the 1996 National Agreement is titled "Enhanced Customer Service." Article IX states:

ARTICLE IX - ENHANCED CUSTOMER SERVICE

Article IX - Special Relief, Customer Service - Yard Crews of the 1991 National Implementing Document is amended to read as follows and furthermore shall be applicable to all carriers party to this Agreement:

Section 1

(a) When an individual carrier has a customer request for particularized handling that would provide more efficient service, or can show a need for relaxation of certain specific work rules to attract or retain a customer, such service may be instituted on an experimental basis for a six-month period.

10

(b) Prior to implementing such service, the carrier will extend seven (7) days advance notice where practicable but in no event less than forty-eight (48) hours' advance notice to the General Chairman of the employees involved. Such notice will include an explanation of the need to provide the service, a description of the service, and a description of the work rules that may require relaxation for implementation. Relaxation of work rules that may be required under this Article shall be limited to: starting times, yard limits, calling rules, on/off duty points, seniority boundaries, and class of service restrictions.

(c) A Joint Committee, comprised of an equal number of carrier representatives and organization representatives, shall determine whether a need exists, as provided in paragraph (a), to provide the service. If the Joint Committee has not made its determination by the end of the advance notice period referenced in paragraph (b), it shall be deemed to be deadlocked, and the service will be allowed on an experimental basis for a six-month period. If, after the six-months has expired, the organization members of the Joint Committee continue to object, the matter shall be referred to arbitration.

(d) If the parties are unable to agree upon an arbitrator within seven days of the date of the request for arbitration, either party may request the National Mediation Board to provide a list of five potential arbitrators, from which the parties shall choose the arbitrator through alternate striking. The order of such striking shall be determined by coin flip unless otherwise agreed by the parties. The fees and expenses of the arbitrator shall be borne equally by the parties.

(e) The determination of the arbitrator shall be limited to whether the carrier has shown a bona fide need to provide the service requested or can provide the service without a special exception to existing work rules being made at a comparable cost to the carrier. If the arbitrator determines that this standard has not been met, the arbitrator shall have the discretion to award compensation for all wages and benefits lost by an employee as a result of the carrier's implementation of its proposal.

<u>Section 2</u>

This Article shall become effective June 1, 1996 and is not intended to restrict any of the existing rights of a carrier.

(Exhibit 1, BLET App'x at 18-19)

9.	In the 1996 National Agreement, the parties also agreed to additional contract language pertaining to Article IX in what the parties refer to Side Letter #9. In relevant part, Side Letter #9 states:

This will confirm our understanding that the NCCC Chairman and the BLE President shall promptly confer on any carrier proposal under Article IX that the BLE President deems to be egregiously inconsistent with our mutual intent. Such proposal shall be held in abeyance pending conference and shall not be implemented until adjusted by agreement of the parties or, absent such agreement, resolved by expedited, party paid arbitration as set forth in the attachment hereto.

(Exhibit 1, BLET App'x at 40-41)

10.    Under Article IX, Section 1(a), if the Carrier "has a customer request for particularized handling that would provide more efficient service, or can show a need for relaxation of certain specific work rules to attract or retain a customer, such service may be instituted on an experimental basis for a six-month period." Under Article IX, Section 1(b), this process is started with a notice of the proposed change in service or work rules from the Carrier to the Union. (Exhibit 1, BLET App'x at 18)

11.    Side Letter #9, however, contains an express and unambiguous limitation on the Carrier's right to implement the service and work rule changes on an experimental basis for a six-month period. That express limitation on the Carrier's right to implement is triggered if the BLE President "deems" the Carrier's Article IX proposal to be egregiously inconsistent with the parties' mutual intent of Article IX and Side Letter #9. If the BLE President deems the Carrier's Article IX proposal to be egregiously inconsistent with the parties' mutual intent, then Side Letter #9 mandates that the Carrier's proposal be held in abeyance pending conference and not be implemented until adjusted by agreement of the parties or, absent such agreement, resolved by expedited, party paid arbitration.

**BNSF's Repudiation of Side Letter #9**

13.    On June 15, 2026, BNSF sent formal notice to BLET under Article IX, Section 1(a) and (b) of the 1996 National Agreement that it intended to pursue a modification to the voluntary

12

rest election provision in Section 6(D)(iii) of the 2022 BLET Implementing Agreement. (ECF 02, BNSF Exhibit 5, BNSF App'x at 81)

14.    On June 22, 2026, pursuant to Side Letter #9, BLET President Mark Wallace emailed a letter to National Carriers Conference Committee ("NCCC") Chairman Jeffrey F. Rodgers notifying him that he had "deemed BNSF's proposal to be egregiously inconsistent with the mutual intent of Article IX." (ECF 02, BNSF Exhibit 7, BNSF App'x at 95) In the same letter, President Wallace explained that, in his view, BNSF's proposal "extends beyond the type of customer-specific service adjustment contemplated under Article IX and instead seeks to address broader workforce availability concerns affecting multiple pools and assignments." President Wallace further requested that Mr. Rodgers provide him with his availability to confer over BNSF's proposal.

15.    On June 24, 2026, BLET President Mark Wallace emailed Mr. Rodgers another six-page document titled, "POSITION OF THE BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN NATIONAL PRESIDENT ON BNSF'S JUNE 15, 2026, ARTICLE IX NOTICE AND PROPOSAL." (ECF 02, BNSF Exhibit 8, BNSF App'x at 97-102) In that document, President Wallace laid out in detail the reasons he deemed BNSF's Article IX proposal to be egregiously inconsistent with the mutual intent of Article IX of the 1996 National Agreement.

16.    Later on June 24, 2026, as required by Side Letter #9, President Wallace and Mr. Rodgers held a telephone conference to attempt to come to an agreement over BNSF's Article IX proposal. During that contractually required conference, however, Mr. Rodgers made no attempt at coming to an agreement and stated that the issue was out of his hands. He further stated he would

13

forward President Wallace's June 24 position statement to BNSF and then it would be up to the Carrier as how to proceed.

17.    On July 7, 2026, BNSF sent President Wallace a letter responding to his June 22, 2026, letter to Mr. Rogers and to President Wallace's June 24, 2026, position statement. (ECF 02, BNSF Exhibit 10, BNSF App'x at 135-140) In its letter, BNSF stated that it "disagrees with BLET's characterization of the June 15 Notice as 'egregiously inconsistent' with Article IX of the 1996 National Agreement." BNSF then goes further in its letter and states that it had determined that President Wallace's deeming of BNSF's proposal to be "ineffective" and that it would proceed with implementation of its Article IX proposal on July 22, 2026, regardless of Side Letter #9's requirement to hold its proposal in abeyance pending expedited, party pay arbitration.

18.    BNSF's July 7, 2026, letter and its statement that it will implement its Article IX proposal on July 22, 2026, despite President Wallace deeming it egregiously inconsistent with Article IX of the 1996 National Agreement constitutes a unilateral repudiation of Side Letter #9 and BNSF's contractual commitment to hold its proposal in abeyance pending expedited, party pay arbitration.

19.    The language of Side Letter #9 is not ambiguous, and it plainly mandates that BNSF hold its proposal in abeyance pending expedited, party pay arbitration over the proposal.

20.    BNSF's claim that President Wallace's deeming of its Article IX proposal raises a contract interpretation question is frivolous and is not arguably justified.

21.    BLET's position that the sole opinion of whether BNSF's Article IX lies with BLET President Wallace is fully supported by not only the unambiguous language of Side Letter #9 and the Questions and Answers regarding Article IX in the 1996 National Agreement, but also

14

by Public Law Board No. 7907, Award No. 01 cited by BNSF in support of its Complaint and motion for injunctive relief in this case. (ECF 02, BNSF Exhibit 3, BNSF App'x at 53-74)

22.    In Public Law Board No. 7907, Award No. 01, the arbitrator was presented with the question of whether SMART was required to provide a documented issue, reason, or other evidence to support their claim prior to stopping a Carrier's implementation of service by deeming the Carrier's proposal egregiously inconsistent with the parties' mutual intent of almost identical language found in Side Letter #9. In answering this question, the arbitrator held:

> The Board notes that Question and Answer 17 under Article XI of the 1996 National Agreement provides in pertinent part:
>
> > Any carrier proposal under this Article which, in the opinion of the UTU President, is egregiously inconsistent with the intent of the rule will not be implemented without conference between the UTU President and the NCCC Chairman.
>
> **This Question and Answer makes it clear that the sole opinion of whether a proposal is "egregiously inconsistent with the intent of the rule" lies with the SMART (formerly UTU) President.** The Board, however, agrees with the Carrier that the SMART President should not indiscriminately use this power to thwart the Carrier's bargained for right to implement a proposal on a six-month trial basis.

(ECF 02, BNSF Exhibit 3, BNSF App'x at 73-74) (emphasis added)

23.    In Public Law Board No. 7907, Award No. 01, the arbitrator goes on to state:

> In those cases where the Organization does invoke the provisions of Side Letter No. 11, it should provide proof to back its assertion or at the minimum explain how a proposal is egregiously inconsistent with the intent of the parties before being allowed to stop a trial implementation of work rule relations under Article XI of the 1996 National Agreement.

(ECF 02, BNSF Exhibit 3, BNSF App'x at 73-74) (emphasis added)

24.    In the instant dispute over BNSF's June 15, 2026, Article IX notice, BLET President Wallace did not simply declare BNSF's proposal egregiously inconsistent with the intent

15

of the parties, but he also provided extensive reasoning for that determination in his July 24, 2026, letter to Mr. Rodgers.

25.    BNSF's unilateral rejection of President Wallace's opinion and reasoning regarding why BNSF's proposal is egregiously inconsistent with the intent of the parties is unsupported by and inconsistent with Public Law Board No. 7907, Award No. 01, the language of Side Letter #9 and by the Questions and Answers regarding Article IX in the 1996 National Agreement. Accordingly, BNSF's claim that it has the contractual right to implement its Article IX proposal regardless of President Wallace's opinion and reasoning is frivolous and constitutes a major dispute as it is a repudiation of Side Letter #9 and by the Questions and Answers regarding Article IX in the 1996 National Agreement.

## IRREPARABLE INJURY

26.    The allegations of paragraphs 1 through 25 are incorporated by reference pursuant to Fed. R. Civ. P. Rule 10(c).

27.    BNSF's violations of its obligations under Sections 2, First and Seventh, and Section 6 of the RLA as set forth in Counts I-III, below, undermine the RLA's statutory purpose to prevent disruptions to interstate commerce through bargaining in conference between carriers and their employees and, therefore, are contrary to the public interest. As such, there is no obligation on the part of the BLET to show irreparable injury because courts may enjoin a violation of the *status quo* pending completion of the required Section 6 procedures without the customary showing of irreparable injury.

28.    In addition to the irreparable injury to the statutory purposes and machinery of the RLA, the illegal and wrongful acts and conduct described under Counts I-III are continuing and, if not enjoined, the BLET and engineers it represents will be injured in ways that cannot be measured accurately in terms of money, either as to extent or amount.

29. As a proximate result of the BNSF's unlawful practices:

    a. By means of the aforementioned acts, BNSF has undermined the BLET's status as the exclusive bargaining representative of engineers by unilaterally altering terms and conditions of employment;

    c. Certain BLET members will immediately be stripped of their negotiated rights to certain periods of rest;

    d. BNSF's conduct is contrary to the public interest in stable labor relations and the maintenance of agreements, as well as their orderly change through the RLA's procedures; and

    e. The injury being suffered by the public, the BLET and engineers is irreparable and continuing and cannot be recovered in an action at law or in administrative or contractual proceedings.

30. For all the foregoing reasons, the BLET and the engineers are without an adequate remedy at law and will suffer serious, substantial, and irreparable injury unless BNSF's unlawful conduct is enjoined. The public interest in the RLA and interstate commerce requires that injunctive relief issue.

31. BNSF will not be injured by granting of injunctive relief requiring it to comply with its duties under the RLA and to restore the *status quo*. BNSF is required by statute to address any operational or financial need for changes to existing agreements only through bargaining under the procedures of the RLA.

32. The aforesaid unlawful acts have been threatened and will be committed unless restrained and BNSF authorized them with actual knowledge thereof.

33.     Substantial and irreparable injury to BLET's property will follow if the injunctive relief is not granted.

34.     As to each item of relief granted, greater injury will be inflicted upon the BLET by the denial of relief than will be inflicted upon BNSF by the granting of relief.

35.     There are no public officers charged with the duty to protect the BLET from these actions.

36.     The BLET has made every reasonable effort to settle such dispute by negotiation.

## CAUSES OF ACTION

### COUNT I
### (Violation of Section 6 of the RLA, 45 U.S.C. § 156)

37.     The allegations of paragraphs 1 through 55 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

57.     Section 6 of the RLA, 45 U.S.C. § 156, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

58.     RLA Section 6 provides that carriers shall not alter the terms of a collective bargaining agreement or working conditions except as provided in Section 6, which requires express notice and bargaining during the amendable period set forth by parties.

18

59.     BNSF did not amend the 1996 National Agreement in accordance with Section 6 bargaining under the RLA, but instead unilaterally and unlawfully altered it by unilaterally repudiating Side Letter #9 and, thus, altered rates of pay, rules, or working conditions in continuing violation of Section 6 of the RLA.

## COUNT II
**(Violation of Section 2 Seventh of the RLA, 45 U.S.C. § 152, Seventh)**

60.     The allegations of paragraphs 1 through 60 of the Complaint are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

61.     Section 2, Seventh of the RLA, 45 U.S.C. §152 Seventh, states:

> No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title.

62.     The continuing acts and conduct by BNSF of unilaterally implementing its Article IX proposal in direct violation of Side Letter #9 is a unilateral change in the terms and conditions of employment of engineers as embodied in the 1996 National Agreement, and such actions are in violation of Section 2, Seventh of the RLA.

## COUNT III
**(Violation of Section 2 First of the RLA, 45 U.S.C. § 152, First)**

63.     The allegations of paragraphs 1 through 62 of the Complaint are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

64.     Section 2, First of the RLA, 45 U.S.C. §152 First, states:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

19

65.    The continuing acts and conduct by BNSF of unilaterally implementing its Article IX proposal in direct violation of Side Letter #9 are in violation of Section 2, First of the RLA, 45 U.S.C. §152, First, in that BNSF has not exerted every reasonable effort to maintain agreements as to rates of pay, rules and working conditions, nor to settle disputes.

## PRAYER FOR RELIEF

The BLET requests judgment against BNSF for the following relief:

A.    That BNSF and its officers, agents and representatives be ordered to restore the *status quo* regarding the unilateral change and breaches outlined above, to cease and desist from altering the terms of the parties' 1996 National Agreement, including ceasing implementation of its Article IX proposal, and to adhere to the terms of the parties' Side Letter #9 and *status quo* working conditions unless and until those terms are altered in Section 6 bargaining with BLET;

B.    That BNSF be ordered to conspicuously post copies of this Court's order at all locations staffed by engineers for a period of one-hundred eighty (180) days;

C.    That BNSF be ordered to provide a copy of this Court's order to every engineer employed by BNSF and represented by BLET, by certified mail at their most current address of record, to ameliorate the effects of BNSF's unlawful conduct on these employees' rights under the RLA;

D.    That the Court issue preliminary and permanent injunctive relief restoring the *status quo* and enjoining BNSF and its officers, agents, and representatives from: 1) breaching Side Letter #9 and *status quo* working conditions; 2) from interfering with, coercing, or discriminating against engineers covered by the CBAs; and 3) from negotiating in bad faith with the BLET;

E.    That the Court award damages and monetary relief as follows:

20

1. Damages in an amount to be determined in the form of BLET's or its members' actual and non-economic damages as permitted by law;

2. BLET's attorney's fees;

3. BLET's costs; and

4. BLET's pre-judgment and post-judgment interest.

F.    That the Court grant the BLET all additional relief that may be equitable.


Dated: July 10, 2026                                 Respectfully submitted,

                                                     /s/ *James Petroff*
                                                     James Petroff (Ohio Bar No, 0042476)
                                                     Joshua D. McInerney (Ohio Bar No. *84355*)
                                                     Christopher S. Peifer (Ohio Bar No. 72637)
                                                     **WENTZ, MCINERNEY,**
                                                     **PEIFER & PETROFF, LLC**
                                                     14 E. Gay St., FL 4
                                                     Columbus, OH 43215
                                                     Phone: (614) 756-5566
                                                     jpetroff@lawforlabor.com
                                                     jmcinerney@lawforlabor.com
                                                     cpeifer@lawforlabor.com


                                                     *Attorneys for Brotherhood of Locomotive Engineers*
                                                     *and Trainmen*

21

## **VERIFICATION**

I, Mark L. Wallace, certify under penalty of perjury that I am the National President of the Brotherhood of Locomotive Engineers and Trainmen, that I am familiar with the matters stated in the foregoing Verified Complaint, and that the facts stated therein are true.

Executed: July 10, 2026

_____
Mark L. Wallace

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2026, I electronically filed the foregoing Answer, Additional Defenses and Counterclaim of Defendant-Counterclaim Plaintiff Brotherhood Of Locomotive Engineers and Trainmen with the Clerk of the Court using the ECF System, which will provide electronic notice and copies of such filing of the to the parties.

<u>/s/ *Joshua D. McInerney*         </u>